UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Onstar, LLC,** | ) | **CASE NO. 1:08 CV 2047** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Micral, Inc., et al.** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon defendant Martin Alpert's Motion for Summary Judgment (Doc. 75). This is a patent dispute. For the reasons that follow, defendant's motion is GRANTED.

**FACTS**

Plaintiff, Onstar, LLC, brings this action against defendants, Micral, Inc., the assignee of U.S. Patent No. 5,742,666 (hereinafter "the patent"), and Martin Alpert, the inventor of the subject of the patent.

1

The patent claims an emergency mobile cellular telephone system. The telephone system dials a preprogrammed emergency telephone number based upon either user inputs to the system or when the system senses a vehicle accident. Once the system connects to the emergency telephone number, the system repeatedly plays a prerecorded emergency message. The user has the option of interrupting the emergency message and speaking directly to the person contacted by dialing the preprogrammed emergency number. The telephone system also includes a location detector and distress signal generator that locates the telephone in an emergency and can notify the nearest emergency responder. The patent further claims configurations of different types of crash detectors. The Court construed certain terms of the patent's claims in its order of August 21, 2009.

In May 2008, defendant Alpert (hereinafter "defendant") contacted plaintiff by telephone and mail, claiming that plaintiff's Onstar system infringes the patent and suggesting the parties attempt to resolve the matter amicably. In August 2008, counsel for defendant sent plaintiff a letter, stating that defendant is the owner and inventor of the patent and that the Onstar system infringes the patent. Plaintiff then filed this declaratory judgment action on August 25, 2008.

Plaintiff's Second Amended Complaint contains three claims for relief. Count One seeks a declaratory judgment that the patent is invalid. Count Two seeks a declaratory judgment that the patent is unenforceable. Count Three seeks a declaratory judgment that plaintiff has not infringed the patent. Defendant Micral's Second Amended Counterclaim alleges that plaintiff is infringing the patent, and/or is inducing others to infringe the patent, and/or is contributing to the infringement of the patent by others. Defendant Micral further alleges that plaintiff's infringement is willful.

Defendant now moves for summary judgment, alleging that he is not an owner of the patent and therefore must be dismissed as a defendant to plaintiff's declaratory judgment claims. Plaintiff opposes the motion.

**STANDARD OF REVIEW**

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)). *See also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). A fact is material only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden shifts to the nonmoving party:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d

146, 150 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 255). *See also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).

Summary judgment is appropriate when a party who bears the burden of proof at trial fails to make a showing sufficient to establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). When the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252). Moreover, if the evidence is "merely colorable" or is not "significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

## **ANALYSIS**

A plaintiff may bring a declaratory judgment action against a defendant to resolve an actual case or controversy as to the infringement of a patent if the plaintiff is threatened with imminent injury in fact fairly traceable to the defendant. 28 U.S.C. §§ 2201, 2202; *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128 n.8 (2007) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). Parties must have "adverse legal interests" to satisfy the "actual case or controversy" requirement, thus the defendant in the declaratory judgment action must have standing to sue the plaintiff in a patent infringement action. *See MedImmune,* 549 U.S. at 128. In an action for declaratory relief, the plaintiff bears the burden of proof that the defendant has

such standing.  Although standing is a question of law for the Court to decide, the plaintiff as the non-movant must present evidence upon which the jury could reasonably find for plaintiff as to any questions of fact.  *See Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

"A patent grant bestows the legal right to exclude others from making, using, selling, or offering to sell the patented invention in the United States, or importing the invention." *Morrow v. Microsoft,* 499 F.3d 1332, 1339 (Fed. Cir. 2007).  A party must suffer an injury to these rights to have standing to sue.  *Id.*  A party has standing to sue in a patent infringement action under 35 U.S.C. § 281 if the party is the patentee, the successor in title to the patentee holding the legal title and all exclusionary rights to the patent, or the transferee of all substantial rights in the patent.  *Morrow v. Microsoft,* 499 F.3d 1332, 1339-1340 (Fed. Cir. 2007).  Such a party holds all the legal rights to the patent and may sue in its name alone.  *Id.* at 1340.

A party also has standing to sue if it holds exclusionary rights and interests created by the patent statutes, such as an exclusive license to make, use, or sell the patented invention, even if it does not hold all substantial rights to the patent.  *Id.*  An exclusive licensee, however, must enforce its rights in the name of the patent owner, and therefore must join the patent owner in the litigation to overcome "prudential standing concerns" such as "the potential for multiple litigations and multiple liabilities against the same alleged infringer."  *Id.* at 1340.[1]  A nonexclusive licensee does not have standing to sue for infringement, even when joining the patent owner, because it holds no exclusionary rights and thus cannot suffer an injury in fact from infringement.  *Id.* at 1341.

---

[1] Joining the patentee is not necessary where these concerns are not raised, such as where the patentee is the alleged infringer.  *Morrow,* 499 F.3d at 1340.

5

Defendant argues that he has no ownership interest in the patent, therefore he is not a proper defendant in a declaratory judgment action.  He asserts that he denied owning the patent in his answer to plaintiff's complaint, and provides his supplemental interrogatory answers reiterating that denial.  Defendant also provides evidence that the U.S. Patent and Trademark Office shows Micral, Inc. as the patent owner of record and points out that Micral admitted owning the patent in its answer to plaintiff's complaint.  Defendant also states that he did not join in Micral's counterclaim for infringement.

Plaintiff responds that a genuine issue of material fact exists as to the ownership of the patent.  Plaintiff argues that defendant has the exclusive right to enforce the patent, which gives him standing to sue for infringement and makes him a proper defendant in a declaratory judgment action.  Plaintiff provides evidence that defendant entered into an agreement with Charles Smoot, owner of Micral, Micral, and other parties regarding the enforcement of the patent.[2]  Plaintiff argues that the following terms of the agreement show that defendant has the exclusive right to enforce the patent:

---

[2] While defendant produced a version of the agreement in discovery, plaintiff alleges that defendant refused to produce the most recent version of the agreement on the basis of privilege, because defendant's counsel is party to the agreement.  Although plaintiff argues that this document was improperly withheld and thus should be presumed to support its position, plaintiff did not pursue a motion to compel.  Moreover, the cases plaintiff cites in support of its argument that the allegedly improperly-withheld document should be presumed to support plaintiff involve documents that were destroyed.  The cases stand for the proposition that the strongest inferences may be drawn against that party which the opposing evidence in the record permits.  *See Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 557 (N.D. Cal. 1987); *Cecil Corley Motor Co. v. Gen. Motors Corp.,* 380 F. Supp. 819, 859 (M.D. Tenn. 1974).  Such a presumption does not appear to be warranted in this case.  Nonetheless, defendant does not dispute plaintiff's contention that all terms of the agreement remain the same except  that defendant's counsel is now a party to the agreement and defendant's percentage of any recovery from enforcement actions has been reduced.

> Alpert will attempt to contact companies that may be violating or
> infringing on this IP.  Alpert will pursue negotiations and, if
> agreeable to both parties, may accept negotiated settlements or
> other agreements relating to the IP.  Should Alpert be unsuccessful
> in these efforts and negotiations, Alpert may engage legal counsel
> to assist in the efforts to enforce Smoot and Alpert's rights of
> recovery for infringing conduct and for exclusive use of the IP.
>
> Smoot and Alpert agree to divide the income received, if any, from
> the efforts obtained under this agreement between them equally. . .
> .  Any legal agreement covering the IP must be mutually
> acceptable to both Smoot and Alpert, which written acceptance
> will not be unreasonably withheld.

Plaintiff also provides the following deposition testimony of Charles Smoot, arguing that it shows that defendant has the exclusive right to enforce the patent:

> Q. Okay.  Now, at some point you had follow-up
> conversations with Dr. Alpert and you entered into some
> kind of agreement regarding enforcing this patent?
>
> A. That's correct.
>
> Q. And as I understand from the previous deposition, whatever
> you get, you get 75 percent and he gets 25 percent of the
> net recovery?
>
> A. That depends on the circumstances, but generally.
>
> Q. Well, explain the deal, as you understand it.
>
> A. Well, you have to go back and look at the term sheet, but
> the basic issue is that Dr. Alpert engineers and operates a
> licensing program for the patent as he sees fit.  There is a
> split in revenues and there is a variable split in the cost and
> prosecution that enter into it.

(Deposition of Charles Smoot, 84:5-24.)

Plaintiff also argues that defendant's conduct in enforcing the patent leading up to and during this litigation show that defendant is an exclusive licensee.  First, plaintiff submits a letter

7

defendant sent to plaintiff claiming that plaintiff was infringing the patent before plaintiff filed this declaratory judgment action.  Defendant did not disclose in the letter that Micral owned the patent.  Plaintiff also submits a letter defendant's attorney subsequently sent to plaintiff stating that "Dr. Alpert is the owner and inventor of U.S. Pat. No. 5,742,666 ("'666 patent"), which is directed to mobile telephone systems for use in an emergency situation."[3]  Plaintiff argues that by sending these letters defendant represented that he owned the patent and had full authority to enter into an agreement with plaintiff to license the patent.  Plaintiff also produces evidence that although the United States Patent and Trademark Office's database shows Micral as the patent owner, the mailing address is defendant's home address.  Finally, plaintiff points out that defendant did not simply deny that he purported to be an owner of the patent, but instead denied that he "currently purports to be an owner of the patent," and that defendant did not provide a supplemental interrogatory response denying ownership of the patent until three months after he provided his initial response objecting to the interrogatory.

Defendant replies that his agreement with Smoot is a fee-splitting agreement without more.  Defendant argues that the agreement describes only an arrangement where defendant implements and runs a program licensing Micral's rights in exchange for a portion of the proceeds, and cites the following term from the agreement:

> Smoot and Alpert agree to equally share all financial return, if any, resulting from this IP.

---

[3]  Defendant argues that the letter from defendant's attorney is hearsay and cannot be considered under Fed. R. Evid. 801.  Defendant is incorrect, as the letter is an admission by a party-opponent under under Fed. R. Evid. 801(d)(2)(D)("a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship").

Defendant also argues that the portion of Smoot's deposition cited by plaintiff supports his argument, and points out that later in the deposition, Smoot confirms that Micral owns the patent even in light of the agreement:

> Q. Well, Micral owns the patent, right?
>
> A. Yes.

(Smoot Depo., 109:2-4.)  Defendant further argues that nothing in the agreement conveys to him any part of the statutorily created patent rights, and that he is not even a licensee because the fee-splitting agreement does not grant him the right to make, use, or sell the invention.  Defendant submits an affidavit of Charles Smoot, stating that the agreement has been superseded by another agreement to which defendant's counsel is a party, and that Micral has the exclusive authority to make all decisions regarding the patent, including the granting of licenses.  Finally, defendant cites to his deposition in which he claims that he did not authorize or approve his attorney's statement to plaintiff that he owns the patent.

Upon review, the Court finds that plaintiff has not produced sufficient evidence upon which a reasonable jury could find that defendant holds a protected legal interest in the patent. Defendant does not have standing as a matter of law and is not a proper defendant in this declaratory judgment action.  Accordingly, defendant's summary judgment motion must be granted.

"[A] patent is a bundle of rights which may be retained in whole or in part, divided and assigned." *Morrow,* 499 F.3d at 1341 n.8.  As an initial matter, Micral's ownership of the patent as reflected by the U.S. Patent and Trademark Office and as admitted in this case does not preclude defendant from having certain rights under the patent as well.  Plaintiff does not argue

9

that defendant holds all substantial rights to the patent, but does argue that he holds the exclusive right to enforce the patent and that such a right gives him standing to sue for infringement so long as Micral is joined in the suit.

In support, plaintiff cites to *Sicom Sys., LTD, v. Agilent Tech., Inc.,* 427 F.3d 971 (Fed. Cir. 2005). *Sicom* involves a patent owned by Canada, who granted an exclusive license to Sicom, including the exclusive right to sue for commercial infringement. Canada reserved for itself a multitude of rights, including the right to veto Sicom's reassignment of its rights, the right to continue operating under the patented technology, and the right to grant contracts and subcontracts to further develop the invention. *Id.* at 979. Sicom argued it held all substantial rights to the patent such that it could sue in its own name without joining Canada in the suit. Sicom specifically pointed to the grant of the exclusive right to sue for commercial infringement. *Id.* at 975. The court held that given the rights Canada reserved to itself, Canada had transferred fewer than all substantial rights to Sicom. The court also held Sicom was an exclusive licensee and could sue for patent infringement, but not without joining Canada in the suit because certain prudential concerns remained, such as "a single infringer could be vulnerable to multiple suits for any non-commercial infringement." *Id.* at 980.

It is not simply the exclusive right to sue, however, that gives a party to an agreement a protected legal interest in a patent. The Federal Circuit has held under circumstances more closely analogous to the evidence presented in this case that the exclusive right to sue does not necessarily make a party an exclusive licensee with the standing to sue for patent infringement even when the patent owner is joined in the suit. In *Propat Int'l Corp. v. RPost, Inc.,* 473 F.3d 1187, 1194 (Fed. Cir. 2007), Propat argued that an agreement with Authentix, the patent owner,

gave Propat the right to sue without joining Authentix, or at least gave Propat the right to sue if it joined Authentix in the suit. The court described the agreement between Propat and Authentix:

> In relevant summary, the agreement between Propat and Authentix gives Propat the responsibility to license the patent to third parties, to enforce the licensing agreements, and to sue infringers. In exchange, the agreement gives Propat a defined percentage share of the proceeds of the licensing royalties and of any judgment or settlement arising out of litigation. As part of the agreement, Propat undertakes "to consult with and obtain prior approval" from Authentix for the selection of any potential targets for licensing or suit, although the agreement provides that Authentix may not unreasonably withhold or delay such approval. The agreement further provides that Authentix may terminate the agreement if Propat breaches the agreement, becomes bankrupt or insolvent, fails to obtain certain levels of income from the patent, or ceases to be actively engaged in licensing or litigation efforts. The agreement forbids Propat from assigning its rights and obligations under the agreement without the consent of Authentix, which consent Authentix may freely withhold. Finally the agreement provides that Authentix will consent to be joined as a party to any action brought by Propat if a court requires it to be joined, although in such a case Propat must provide counsel for Authentix and defray all the expenses Authentix may incur in connection with its involvement in the litigation.
>
> The agreement contemplates that Propat will be engaged in licensing and litigation. It does not explicitly address whether Propat enjoys a license to practice the patent. Similarly, it does not explicitly state whether Authentix retains the right to practice the patent.

*Id.* at 1190. The court held that this agreement did not transfer substantially all of the rights under the patent and Propat could not sue for infringement in its own name: "While the rights to sue and grant licenses accord Propat broad authority to act as Authentix's agent for purposes of licensing and litigation, they do not transfer ownership of Authentix's patent." *Id.* at 1192.

More importantly for this case, however, is that the court also determined that this agreement did not give Propat a protected legal interest in the patent such that it could "be said

11

to suffer legal injury from an act of infringement" and thus have standing to sue for infringement if it joins the patent owner. *Id.* at 1193. For guidance, the Federal Circuit turned to *Crown Die & Tool Co. v. Nye Tool & Machine Works,* 261 U.S. 24 (1923). In that case, the Supreme Court refused to recognize an assignment of the right to sue on a patent separate from a conveyance of a proprietary interest in the patent. *Id.* at 34-36. Although the Federal Circuit in *Propat* held that Propat had more rights with respect to the patent than the assignee in *Crown Die,* the court found that "Propat lacks important indicia of a true ownership interest in the patent, such as the right to transfer its interest." *Propat,* 473 F.3d at 1194. The status Propat attained under the agreement was "more consistent with the status of an agent than a co-owner." *Id.*

> In this case, defendant's obligations under the agreement are as follows:
>
>> Alpert will attempt to contact companies that may be violating or infringing on this IP. Alpert will pursue negotiations and, if agreeable to both parties, may accept negotiated settlements or other agreements relating to the IP. Should Alpert be unsuccessful in these efforts and negotiations, Alpert may engage legal counsel to assist in the efforts to enforce Smoot and Alpert's rights of recovery for infringing conduct and for exclusive use of the IP.

The agreement is silent as to whether defendant has the right to make the invention or sell it, or even whether Smoot retains the right to practice the invention under the agreement. The remainder of the agreement is concerned with how proceeds from defendant's efforts to negotiate settlements or "other agreements relating to the IP" will be split between defendant and Smoot. The agreement further states that "[a]ny legal agreement covering the IP must be mutually acceptable to both Smoot and Alpert, which written acceptance will not be unreasonably withheld." Smoot's testimony clarifies that the "negotiated settlements or other agreements relating to the IP" include patent licenses, for which defendant must obtain Smoot's

12

consent.

The Court finds that this agreement does not give defendant a protected legal interest in the patent such that defendant would suffer injury from an act of infringement. *Morrow,* 499 F.3d at 1339-1340; *Propat,* 473 F.3d at 1193.  Like the agreement in *Propat,* this agreement contemplates that defendant will act as an agent for the patent owner in licensing and litigation, but does not transfer any true ownership interest in the patent to defendant.  Although the agreement refers to defendant's rights to "exclusive use of the IP," the source and extent of those rights are unclear, and understandably neither plaintiff nor defendant argues that the agreement conveys those rights.  The case law reviewed by the Court confirms that neither party could credibly make such an argument.  Moreover, plaintiff does not argue that the term is ambiguous and does not offer evidence outside of the four corners of the agreement on the meaning of the term. While the agreement purports to allow defendant to pursue legal action for infringement of the patent, defendant lacks standing to sue for infringement and is not a proper party to a declaratory judgment action.  *See Morrow,* 499 F.3d at 1341 n.8 ("While parties are free to assign some or all patent rights as they see fit based on their interests and objectives, this does not mean that the chosen method of division will satisfy standing requirements."); *id.* at 1342 ("'Standing to sue for infringement depends entirely on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among the parties regarding who may sue.'" (citing *Prima Tek II, L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1381 (Fed. Cir. 2000))).

Plaintiff's other evidence is simply not enough for a reasonable jury to find that defendant has a protected legal interest in the patent.  Defendant's letter to plaintiff claiming that plaintiff is infringing the patent appears to be in furtherance of defendant's obligations under his

agreement with Smoot.  Defendant's counsel's letter to plaintiff in which counsel describes defendant as the owner of the patent cannot create a protected legal interest in a patent that has not otherwise been granted by the patent owner.  Accordingly, defendant's motion for summary judgment is granted.

### **CONCLUSION**

For the reasons set forth above, defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

   /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 2/24/10